ORAL ARGUMENT NOT YET SCHEDULED

**Appeal No. 22-7073**

---

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
## for the
# 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔬𝔣 𝔆𝔬𝔩𝔲𝔪𝔟𝔦𝔞 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

---

TANYA MILLS,

*Appellant,*

v.

ANADOLU AGENCY NA, INC.

*Appellee.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

**BRIEF OF APPELLEE**

---

KLAPROTH LAW PLLC

Brendan J. Klaproth
2300 Wisconsin Ave NW
Suite 100A
Washington, DC 20007
Tel:   202-618-2344
Fax:   202-618-4636
Email bklaproth@klaprothlaw.com
*Counsel for Appellee*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), Appellee Anadolu Agency NA, Inc. ("Anadolu") hereby submits this certificate as to parties, rulings, and related cases.

**(A)    Parties and Amici**

Parties

The Appellant (Plaintiff below) is Tanya Mills.

The Appellee is Anadolu Agency NA, Inc.

Intervenors

There were no intervenors at the District Court.

Amici

The Appellee is not aware of any *amici* in this matter.

**(B)    Rulings Under Review**

The following rulings are under review:

(1)    Order granting Anadolu's Motion to Dismiss (November 24, 2020) [ECF No. 20] and Memorandum Opinion (November 24, 2020) [ECF No. 21];

(2)    Order and Memorandum Opinion granting Anadolu's Motion to Dismiss based on lack of personal jurisdiction (April 28, 2022) [ECF No. 26].

**(C)    Related Cases**

This case has not previously been before this or any other court. Undersigned counsel is unaware of any related cases.

i

# TABLE OF CONTENTS

**CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES**..........i

**JURISDICTIONAL STATEMENT** ........................................................1

**STATEMENT OF ISSUES PRESENTED FOR REVIEW** .................................1

**STATEMENT OF THE CASE**.............................................................2

    I.     Plaintiff Entered into a Contract with A.A. Turk (not Anadolu) that Requires all Disputes be Brought in Turkiye .......................................2

    II.    Anadolu Never Employed Mills in the District of Columbia ...............4

    III.   Procedural Background ........................................................4

**STANDARD OF REVIEW** ................................................................6

**SUMMARY OF ARGUMENT** ............................................................6

**ARGUMENT** ............................................................................9

    I.     The Court Lacks Jurisdiction over Anadolu .........................................9

    II.    Mills Failed to State a Claim under the DCWPCL ............................17

    III.   This Should Court Affirm on the Alternative Basis, *Forum Non Conveniens* ..................................................................................26

**CONCLUSION** ........................................................................31

# TABLE OF AUTHORITIES

## CASES

*Al-Quraan v. 4115 8th St. NW, LLC,*
 113 F. Supp. 3d 367 (D.D.C. 2015) ...............................................22

*Ambellu v. Re'ese Adbarat Debre Selam Kidist Mariam Ethiopian Orthodox Tewhado Religion Church*,
 No. 19-7124, 2020 WL 873574 (D.C. Cir. Feb. 14, 2020)...........................8

*Arthur Andersen LLP v. Carlisle*,
 556 U.S. 624 (2009)...............................................................28

*Asahi Metal Indus. v. Super. Ct of Cal.*,
 480 U.S. 102 (1987)................................................................11

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)....................................................8, 20, 21

*Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas*,
 571 U.S. 49 (2013).............................................................27, 29

*Azima v. RAK Inv. Auth.,*
 926 F.3d 870 (D.C. Cir. 2019) ...............................................27, 29

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)................................................................20

*Browning-Ferris Industries of California, Inc. v. National Labor Relations Board*, 911 F.3d 1195 (D.C. Cir. 2018).........................................22

*Burger King Corp. v. Rudzewicz*,
 471 U.S. 462 (1985)................................................................10

*D & S Consulting, Inc. v. Kingdom of Saudi Arabia*,
 322 F. Supp. 3d 45 (D.D.C. 2018)...............................................29

*\*D & S Consulting, Inc. v. Kingdom of Saudi Arabia*,
 961 F.3d 1209 (D.C. Cir. 2020) .........................................27, 28, 29

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)......................................................................10

*Erwin-Simpson v. AirAsia Berhad,*
    985 F.3d 883 (D.C. Cir. 2021) ......................................................9

*Fox v. Computer World Servs. Corp.*,
    920 F. Supp. 2d 90 (D.D.C. 2013) ...............................................28

*GasPlus, L.L.C. v. U.S. Dep't of Interior*,
    466 F.Supp.2d 43 (D.D.C. 2006) .................................................11

*Goodyear Dunlop Tires Operations v. Brown*,
    564 U.S. 915 (2011)......................................................................10

*Helmer v. Doletskaya*,
    393 F.3d 201 (D.C. Cir. 2004) .....................................................11

*In re Fed. Bureau of Prisons' Execution Protocol Cases*,
    955 F.3d 106 (D.C. Cir. 2020) .....................................................27

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945)......................................................................11

*J. McIntyre Mach., Ltd. v. Nicastro*,
    564 U.S. 873 (2011)......................................................................11

*Kaempe v. Myers*,
    367 F.3d 958 (D.C. Cir. 2004) .......................................................2

*Kaplan v. Cent. Bank of the Islamic Republic of Iran*,
    896 F.3d 501 (D.C. Cir. 2018) .....................................................16

*Khatib v. All. Bankshares Corp.*,
    846 F. Supp. 2d 18 (D.D.C. 2012)......................................10, 12, 13

*\*Livnat v. Palestinian Auth.*,
    851 F.3d 45 (D.C. Cir. 2017) ......................................6, 13, 14, 15

*Molock v. Whole Foods Mkt., Inc.,*
    297 F. Supp. 3d 114 (D.D.C. 2018) ..............................................................13

\*Morrison v. Int'l Programs Consortium, Inc.,*
    253 F.3d 5 (D.C. Cir. 2001) ....................................................... 8, 19, 21-24

*Mwani v. bin Laden,*
    417 F.3d 1 (D.C. Cir. 2005) ..............................................................4

*Perez v. C.R. Calderon Constr., Inc.,*
    221 F. Supp. 3d 115 (D.D.C. 2016) ..............................................................22

*Salinas v. Com. Interiors, Inc.,*
    848 F.3d 125 (4th Cir. 2017)..............................................................22

*Sampaio v. Inter-Am. Dev. Bank,*
    468 F. App'x 10 (D.C. Cir. 2012).......................................................15, 21, 24

*Shoppers Food Warehouse v. Moreno,*
    746 A.2d 320 (D.C. 2000) .................................................... 10, 11

*Steinke v. P5 Sols., Inc.,*
    282 A.3d 1076 (D.C. 2022) ..............................................................23

*United States v. Stover,*
    329 F.3d 859 (D.C. Cir. 2003) ......................................................15, 16, 21, 24

*Ventura v. Bebo Foods, Inc.,*
    738 F. Supp. 2d 1 (D.D.C. 2010)..............................................................22

*Vila v. Inter-Am. Inv. Corp.,*
    570 F.3d 274 (D.C. Cir. 2009) .....................................................6

**\*Authorities upon which we chiefly rely are marked with asterisks.**

**STATUTES, REGULATIONS & CODES**

D.C. Code § 13-413(a)(1)-(5) .................................................................10

D.C. Code § 32-1301(1B) ................................................................17, 22

D.C. Code § 32-1303 ............................................................................22

# GLOSSARY OF ABBREVIATIONS

A.A. Turk            Anadolu Ajansi Turk A.S.

Anadolu             Anadolu Agency NA, Inc.

DCWPCL              D.C. Wage Payment and Collection Law

## JURISDICTIONAL STATEMENT

The District Court had diversity jurisdiction under 28 U.S.C. § 1332 but lacked personal jurisdiction over Anadolu as set forth in the District Court's decision. This Court has jurisdiction under 28 U.S.C. § 1291. The District Court issued an order on April 28, 2022 granting final judgment in favor of Anadolu.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.      Plaintiff Tanya Mills ("Mills") worked for Anadolu Ajansi Turk A.S. ("A.A. Turk") as an independent contractor pursuant to a written contract. Rather than sue A.A. Turk, Mills sued one of its subsidiaries, Anadolu. The first issue on appeal is whether the contacts of a parent corporation, A.A. Turk, can be imputed onto one of its subsidiaries, Anadolu, for purposes of personal jurisdiction.

2.      The second issue is whether the District Court correctly found that Mills failed to plausibly allege that she was "employed" by Anadolu for purposes of the D.C. Wage Payment and Collection Law, D.C. Code 32-1301, *et seq.*("DCWPCL").

3.      The final issue is whether this Court should affirm on the alternative grounds that Mills' case should be dismissed under *forum non conveniens* because she signed a forum selection clause requiring all disputes to be resolved in Turkiye.

1

## STATEMENT OF THE CASE

**I.     Plaintiff Entered into a Contract with A.A. Turk (not Anadolu) that Requires all Disputes be Brought in Turkiye**

On June 1, 2019, Mills entered into a written contract with A.A. Turk located at Eti Mah, Anakara Turkiye to provide consulting services as an independent contractor for A.A. Turk from June 1, 2019 until July 31, 2019 (the "Contract"). JA 20-22.[1] Under the Contract, A.A. Turk agreed to pay Mills a monthly fee in exchange for her consulting services during the term of the Contract. JA 20-22 at ¶ 6. The Contract stated that Mills "will never be considered as an employee of current Labor Law in any case and at any time with this agreement" and that the services provided by Mills, "do not create any business relationship that give rise to the right to work in anyway." JA 20-22 at ¶ 7. The Contract does not provide, as Plaintiff alleges, that Plaintiff is entitled to annual leave or vacation leave. The Contract also contained an integration clause[2] that states:

———————————

[1]     The District Court properly considered the Mills' Contracts with A.A. Turk and the offer letter without converting this motion into a motion for summary judgment because the contracts and offer letter are incorporated into the Amended Complaint and integral to Plaintiff's claims. JA 11-12; *Kaempe v. Myers,* 367 F.3d 958, 965 (D.C. Cir. 2004).

[2]     Mills and A.A. Turk entered into identical contracts on May 14, 2018, July 1, 2018, October 1, 2018, December 1, 2018, February 1, 2019, and April 1, 2019 for a two- to three-month term. In light of the integration clause in the Contract, these contracts are not at issue. Nonetheless, those contracts are contained at JA 23-35.

> This agreement is the entire agreement between the parties in relation to the subject matter, invalidates, and replaces all previous written or oral agreements, agreement samples, representations, or proposal not contained in this agreement.

JA 20-22 at ¶ 10. The Contract also contains a forum selection clause that states, "The Ankara Court and enforcement office shall be exclusive authorized venues for the resolution of any matter of controversy or dispute between the parties…" JA 20-22 at ¶ 12.

Similarly, the offer letter presented to, and signed by, Plaintiff also stated "this agreement is subject to Turkish employment laws." JA 41.

Mills began working for A.A. Turk *in Turkiye* on April 6, 2018 as an Executive Producer. JA 11. Mills worked for A.A. Turk under an independent contractor agreement that was renewed every 60 days. JA 12; JA 20-25 (contracts). On January 31, 2019, Mills "returned to the United Stated for personal reasons." JA 12. In March 2019, "A.A. Turk assigned her to work" in Washington, D.C. where she worked until July 31, 2019. *Id.*

As of the date of the briefing on the motion to dismiss below, Mills identified herself on her LinkinIn Profile as an Executive Producer for TRT World in Istanbul, Turkiye. JA 44.

## II.    Anadolu Never Employed Mills in the District of Columbia

Anadolu is a corporation formed and organized under the laws of the State of New York with its principal place of business in New York. JA18-19.[3]  Anadolu is a separate and distinct legal entity from A.A. Turk. *Id.*; JA 36-39 (incorporation documents).  Anadolu has separate bank accounts, payroll, telephone numbers, employees, and offices from A.A. Turk. JA 18-19.  Anadolu also has distinct employees, directors, and employment practices from A.A. Turk. *Id.*

Anadolu never employed Mills in the District of Columbia. *Id.* Anadolu never had any employment relationship with Mills, never entered into a contract with Mills, never made any payment to Mills, and never transacted any business in the District of Columbia with Mills at any time relevant to this litigation. *Id.* Neither Anadolu, nor any of its employees, discharged or terminated Mills at any relevant time to this litigation. *Id.* at ¶ 6.

## III.    Procedural Background

On October 14, 2019, Mills sued Anadolu, not A.A. Turk., under the DCWPCL claiming she was owed unpaid vacation and annual leave under the Contract. JA 2

---

[3]    The District Court properly considered the Oktay Declaration in its review of Defendant's motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). *Mwani v. bin Laden,* 417 F.3d 1, 7 (D.C. Cir. 2005).

4

On January 28, 2020, Plaintiff filed her Amended Complaint. JA 8.

On February 11, 2020, Anadolu moved for dismissal because (1) the District Court lacked personal jurisdiction over Anadolu; (2) dismissal was warranted under the doctrine of *forum non conveniens* due to the forum selection clause; and (3) Mills failed to state a claim under the DCWPCL, as Anadolu is not an "employer" as defined by the DCWPCL. Def.'s Mot. To Dismiss [ECF No. 12]. The District Court dismissed the lawsuit finding that Mills failed to state a claim under the DCWPCL by failing to "allege[] facts to es:tablish that she was employed" by Anadolu. JA 72. The District Court did not initially address the two other grounds argued by Anadolu for dismissal "[b]ecause the Court f[ound] that Ms. Mills has failed to state a claim under the DCWPCL, it [did] need not reach Anadolu's other arguments." JA 67 at n.3.

Mills filed an appeal to this Court. *See* Tanya Allegra Mills v. Anadolu Agency NA, Inc., Appeal No. 20-7118.  This Court "remanded to the district court to determine whether it has personal jurisdiction over appellee" finding that the district court was obligated to address the issue of personal jurisdiction before reaching the merits. *See* Tanya Allegra Mills v. Anadolu Agency NA, Inc., Appeal No. 20-7118, Order (August 19, 2021).

On remand, on April 28, 2022, the District Court dismissed this case once again, but on the alternative ground that it lacked personal jurisdiction over Anadolu.

5

*See generally* JA 83-95. The District Court correctly found that "the record is insufficient to establish that her claims regarding compensation for unused paid leave days arose from, or are related to, Anadolu's actions in D.C." JA 94. Thus, the District Court lacked personal jurisdiction over Anadolu.

## STANDARD OF REVIEW

The Circuit Court reviews the District Court's decision on Defendant's motions to dismiss *de novo. Vila v. Inter-Am. Inv. Corp.*, 570 F.3d 274, 278 (D.C. Cir. 2009); *Livnat v. Palestinian Auth*., 851 F.3d 45, 48 (D.C. Cir. 2017).

## SUMMARY OF ARGUMENT

Plaintiff Mills sued the wrong defendant in the wrong court. Mills brought this wage case against Anadolu seeking to recover alleged unpaid vacation and annual leave under the DCWPCL. But Mills was never employed by Anadolu. Mills worked for A.A. Turk pursuant to the written Contract, which is a separate and distinct entity from Anadolu. Pursuant to that Contract:

- Mills worked A.A. Turk, not Anadolu;

- Mills worked for A.A. Turk as an independent contractor, not as an employee, in Turkiye;

- The Contract covered a two-month period, June 1, 2019 through July 31, 2019;

- The Contract contained an integration clause;

- The Contract did not provide Mills with 20 days of paid vacation leave per year;

- The Agreement stated that the courts in Ankara, Turkiye have sole and exclusive jurisdiction.

Despite these unambiguous terms, Mills filed a single-count lawsuit in the District of Columbia (not Ankara, Turkiye as required by the Contract) against Anadolu (not A.A. Turk, the party to the Contract) for vacation leave (not provided for in the Contract) under the DCWPCL. Mills' only basis for suing Anadolu, A.A. Turk's subsidiary, is her naked assertion that Anadolu was a "joint employer."  But this transparent attempt to plead around her Contract with A.A. Turk containing the forum selection clause fails.

*First*, the District Court lacks personal jurisdiction over Anadolu because Anadolu is "at home" in New York, and Mills' claim for unpaid vacation does not "arise out of" any of Anadolu's contacts in the District of Columbia. Mills argues, in a conclusory manner, that Anadolu's lack of contacts with the District of Columbia do not matter, because A.A. Turk are "joint employers." But even if that were true (it is not) the law does not permit a court to impute a parent corporation's contact onto a subsidiary based simply on a conclusory allegation that the two distinct companies are "joint employers." Further, Mills cries foul that she should have been provided with discovery, but she did not request jurisdictional discovery from the District Court. She instead requested discovery on her "joint employer"

theory. Mills also failed to come forward with any pertinent jurisdictional facts to make a *prima facie* showing of personal jurisdiction.

*Second,* Mills failed to state a claim under the DCWPCL because she failed to "alleg[] facts to establish that she was employed" by Anadolu. JA 27. Mills again reverts to her conclusory "joint employer" theory, and again comes up short. She argues that the District Court applied the incorrect law in deciding whether Mills was employed by Anadolu by relying on *Morrison v. Int'l Programs Consortium, Inc.,* 253 F.3d 5, 11 (D.C. Cir. 2001). Mills, however, cited to and asked the District Court to apply *Morrison*'s economic realities test below. She cannot argue for the District Court to apply *Morrison*'s economic realities test below, and now argue on appeal that the District Court erred by applying that test. Not only is *Morrison* the correct law to apply, but Mills is also estopped from changing her position on appeal.

In addition, Mills claims she should have received discovery on her "joint employer" issue. But Mills misapprehends Rule 8's plausibility pleading requirements. Without pleading a plausible claim for relief, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *see also Ambellu v. Re'ese Adbarat Debre Selam Kidist Mariam Ethiopian Orthodox Tewhado Religion Church*, No. 19-7124, 2020 WL 873574, at *1 (D.C. Cir. Feb. 14, 2020) (denying plaintiff's request for limited discovery and granting summary affirmance). It is not enough for Mills

to state in a conclusory fashion that she was "jointly employed" by Anadolu. Mills needed to allege facts to support that conclusion, which she failed to do.

*Finally*, Mills signed a Contract with A.A. Turk containing a mandatory forum selection clause requiring that all disputes be brought in Turkiye. Mills argued below that the forum selection clause does not apply because she did not sue A.A. Turk, the party to the Contract, but instead sued Anadolu. But the doctrine of estoppel prevents Mills from suing under her Contract with A.A. Turk, while simultaneously arguing that the forum selection clause contained therein does not apply. Thus, although the District Court did not reach this issue, this Court can affirm the District's Court dismissal based on the alternative grounds of *forum non conveniens*.

## ARGUMENT

### I.    The Court Lacks Jurisdiction over Anadolu

Plaintiff's relationship was that of an independent contractor to A.A. Turk, not to Anadolu – the Defendant here. Plaintiff sued the wrong entity. While the case against Anadolu should be dismissed on that basis alone, it also renders this Court with no ability to exercise personal jurisdiction.

There are two ways a court can exercise personal jurisdiction over a defendant: general jurisdiction and specific jurisdiction. *Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883, 888 (D.C. Cir. 2021). There is no dispute the District Court

lacked general jurisdiction over Anadolu. JA 89-90.[4]

Specific personal jurisdiction "depends on an affiliation between the forum and the underlying controversy," meaning that the defendant's acts within the forum-state give rise to the cause of action. *Goodyear Dunlop Tires Operations v. Brown*, 564 U.S. 915, 919 (2011). Under the District of Columbia's long-arm statute, specific jurisdiction exists if the claim against the corporation arises from the corporation's transacting business in the District of Columbia; contracting to supply services in the District of Columbia; causing tortious injury in the District of Columbia; or having an interest in, using, or possessing real property in the District of Columbia. *Khatib v. All. Bankshares Corp.*, 846 F. Supp. 2d 18, 28-29 (D.D.C. 2012) (citing D.C. Code § 13-413(a)(1)-(5)). There must be a "nexus" between the plaintiff's claim and the defendant's conduct. *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 332 (D.C. 2000). The plaintiff's "claim for relief must 'result[ ] from alleged injuries that 'arise out of or relate to' those activities.'" *Id.* (*citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). That statute, however, allows for the exercise of personal jurisdiction only under certain circumstances, and courts

---

[4] The test for general personal jurisdiction is straightforward. A **c**orporation is "at home" (and, therefore, subject to general jurisdiction) only in its state of incorporation and its principal place of business**.** *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014). Anadolu is a New York State corporation with its principal place of business in New York. JA 36-39.

have interpreted the statute to be "coextensive with the due process clause." *Helmer v. Doletskaya*, 393 F.3d 201, 205 (D.C. Cir. 2004).

To satisfy due process, there must be "minimum contacts" between a non-resident defendant and the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *J. McIntyre Mach., Ltd. v. Nicastro,* 564 U.S. 873, 880 (2011) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945)). "These minimum contacts must be grounded in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities with the forum state, thus invoking the benefits and protections of its laws.'" *GasPlus, L.L.C. v. U.S. Dep't of Interior*, 466 F.Supp.2d 43, 46 (D.D.C. 2006) (quoting *Asahi Metal Indus. v. Super. Ct of Cal.*, 480 U.S. 102, 109 (1987)).

Here, Anadolu did not contract with or employ Plaintiff in the District of Columbia. JA 18-19. Anadolu never made any payments to Mills for work she allegedly performed in the District of Columbia. *Id.* Anadolu never transacted business with Mills in the District of Columbia. *Id.* And Anadolu never discharged Mills from employment in the District of Columbia. *Id.* Furthermore, Mills admits in her LinkdIn page that she was employed by "TRT World" in "Istanbul, Turkiye" at all times relevant. JA 42.

Despite these facts showing that Mills' claims do not arise out of any activity by Anadolu in the District of Columbia, she makes four arguments with respect to

11

the District Court's dismissal of her case for lack of personal jurisdiction.

*First,* in an attempt to get around the fact that Anadolu had no relationship (and certainly no employment relationship) with Mills, Mills argues here on appeal that Anadolu and A.A. Turk are "joint employers."[5] Pl.'s Br. at 17-18. Even though personal jurisdiction is the basis for the District Court's dismissal, Mills does not analyze personal jurisdiction at all in her Brief or explain how her claim arises out of Anadolu's contacts.

Instead, Mills argues that "A.A. Turk and Anadolu are joint employers, [and so] they are jointly and severally liable for Mills' wages regardless of who delivered the termination notice." Pl.'s Br. at 18. In other words, Mills' argument here is that she can plead Anadolu is a joint employer (which she did not actually even plead) in a conclusory manner and that is enough to avoid the fact that the District Court did not have personal jurisdiction over Anadolu. Not so.

What Mills is actually attempting to argue here under the moniker of "joint employers" is an alter ego theory for personal jurisdiction. *Khatib,* 846 F. Supp. 2d at 31. In other words, she is asking that A.A. Turk's contacts in the District of Columbia should be imputed to Anadolu for purposes of personal jurisdiction.

---

[5]     Mills' Amended Complaint contains zero references to a "joint employer" theory. In her Amended Complaint she refers to A.A. Turk and Anadolu as a "single employer" (JA 8-9) but there is no such "joint employer" theory alleged in her Amended Complaint.

Leaving aside that she did not plead this in her Amended Complaint or argue it below, such a theory lacks a factual basis[6] and legal support. *See Khatib*, 846 F. Supp. 2d at 31–33 ("as a general rule, one corporation's contacts with a given forum may not be attributed to an affiliated corporation"). The law presumes corporations are separate and distinct entities. *Id.*; *see also Molock v. Whole Foods Mkt., Inc.,* 297 F. Supp. 3d 114, 128 (D.D.C. 2018). Mills cannot just lump together two corporate entities through impermissible group pleading tactics to establish personal jurisdiction simply by calling them "joint employers."

Further, Mills came forward with no evidence to establish specific jurisdiction over Anadolu, to refute the evidence offered by Anadolu in its motion, or otherwise make a *prima facie* showing of the pertinent jurisdictional facts. *See e.g. Livnat v. Palestinian Auth*., 851 F.3d 45, 57 (D.C. Cir. 2017). Mills argues the District Court "credited the extrinsic declaration of Anadolu's witness, Oktay, who only testified that Sevgi [the person who allegedly terminated Mills] was not employed by Anadolu." Pl.'s Br. at 18. Mills does not dispute that the District Court was permitted to consider the declaration when deciding the issue of personal jurisdiction. And Mills does not identify a single factual dispute between the Oktay declaration and

---

[6]     Anadolu and A.A. Turk are separate legal entities that do not have common management, staff, employment practices, bank accounts, telephone numbers, payroll, or offices. JA 18-19.

13

the Amended Complaint. Although the Amended Complaint alleged that Mills was terminated by Mehmet Ali Sevgi, who was employed by Anadolu (Am. Compl. at ¶ 2), Mills withdrew this allegation in her opposition brief. JA 76 (*Comparing* Am. Compl. at ¶ 2; *with* Pl.'s Opp'n at 31[7] (ECF No. 18)). In other words, the District Court recognized that Mills withdrew her allegation that Sevgi was employed by Anadolu, by conceding in her Opposition brief that Sevgi was not employed by Anadolu. To put it simply, there was no factual dispute.

And even if Mills did not make this concession as she now claims (she did), her conclusory statement and bare allegation that she was employed by Anadolu and notified by one its employees that A.A. Turk was not renewing her contract is insufficient to make out a *prima facie* showing of personal jurisdiction to survive a motion to dismiss. *Livnat*, 851 F.3d at 57. ("Conclusory statements or a bare allegation of conspiracy or agency do not satisfy this burden"). Further, on a motion to dismiss, a district court "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts." *Id.* Her bare conclusion that she was "jointly employed" by Anadolu,[8] along with A.A. Turk, is insufficient to establish

---

[7]    The District Court cited to the ECF pagination and not the internal pagination of Plaintiff's Opposition.

[8]    The lack of factual support for Mills' conclusory allegations is evident in her Brief when she speculates, "[t]he decision [to terminate Mills] *might* very well have been made jointly." Pl.'s Br. 14 (emphasis added). Speculation and possibilities

14

pertinent jurisdictional facts or to make a *prima facie* showing.

*Second,* Mills faults the District Court for not allowing her the "opportunity to further develop her joint employment theory through discovery…Mills requested discovery on the joint employer and personal jurisdiction issues..." Pl.'s Br. at 19. Contrary to what she writes in her brief, Mills did not request jurisdictional discovery below. *See* JA 55-58; *see also* Pl.'s Opp'n to MTD at 24-25 (ECF No. 18). She requested discovery on the merits of her case, specifically "whether: (1) Defendant Anadolu was Plaintiff's employer within the meaning of the DCWPCL and the economic reality test; (2) whether Plaintiff and Defendant intended the consultancy agreement to be fully integrated; and (3) whether Plaintiff's separation from employment with the Defendant was a termination…" JA 55. She did not request jurisdictional discovery as she represents to this Court.

Accordingly, her request for jurisdictional discovery was waived. *Sampaio v. Inter-Am. Dev. Bank*, 468 F. App'x 10 (D.C. Cir. 2012) (rejecting argument raised for the first time on appeal); *see also United States v. Stover*, 329 F.3d 859, 872 (D.C. Cir. 2003) (arguments not presented to the district court "cannot be considered for the first time on appeal").

*Third,* Mills tries to get around her waiver regarding jurisdictional discovery

---

about what may have occurred does not rise to the level of a ***plausible*** claim.

15

by claiming that she requested merits discovery on her "joint employer" theory, which is highly fact intensive and not appropriate to resolve on a motion to dismiss. Pl.'s Br. at 21. In other words, Mills claims she should be entitled to full-fledged discovery on the merits without making any showing of personal jurisdiction over Anadolu. No such "joint employer" exception exists, however, to personal jurisdiction. Indeed, the question of personal jurisdiction must be addressed before a court can reach the merits of the claims. *See e.g. Kaplan v. Cent. Bank of the Islamic Republic of Iran,* 896 F.3d 501, 511 (D.C. Cir. 2018).

*Finally*, with respect to personal jurisdiction, Mills argues that the District Court was required to hold an evidentiary hearing. Pl.'s Br. at 17-18. But it is unclear why Mills raises this argument here, when she did not request an evidentiary hearing below. This argument is waived. *Stover*, 329 F.3d at 872. Nevertheless, as discussed *supra*, Mills came forward with no evidence establishing pertinent jurisdictional facts nor did she make a *prima facie* showing of jurisdiction. Thus, there was no disputed fact to be resolved through an evidentiary hearing.

Because Plaintiff's claims do not derive from any activity within the District of Columbia by Anadolu, the long-arm statute lacked the reach to pull Anadolu before the District Court. There is no connection between Anadolu's contacts with the District of Columbia and the claims made by Plaintiff in her Amended Complaint. Accordingly, the District Court's decision should be affirmed.

16

## II.     Mills Failed to State a Claim under the DCWPCL

In addition to the lack of personal jurisdiction, the District Court also correctly dismissed Mills' lawsuit for failing to state a claim. Mills brought a single-count lawsuit against Anadolu under the DCWPCL alleging that Anadolu failed to pay Plaintiff her alleged accrued vacation leave upon termination in violation of D.C. Code § 32-1303. JA 14. The District Court correctly found that Mills failed to "allege[] facts to establish that she was employed" by Anadolu. JA 72.  In other words, Mills' single-count lawsuit brought under the DCWPCL was dismissed because she did not allege facts to support the most basic element of a DCWPCL claim—that she was **_employed_** by Anadolu. JA 80.

Under the DCWPCL, an "employer" is defined as "every individual, partnership, firm, general contractor, subcontractor, association, [and] corporation….employing any person in the District of Columbia." D.C. Code § 32-1301(1B). Anadolu never employed Plaintiff. The independent contractor agreement that Plaintiff is suing under is between Plaintiff and A.A. Turk. JA 20-22 (*quoted* at JA 70). Even accepting Plaintiff's allegation as true that she was an "employee" rather than an independent contractor, she could have only been employed by A.A. Turk. *Id.*

Mills did not sue A.A. Turk, however, because her Contract required her to bring any claims against A.A. Turk in Ankara, Turkiye. JA 22 ("Ankara [Turkiye]

17

Courts and enforcement offices shall be the exclusive authorized venues for the resolution of any matter of controversy or dispute between the parties relates there to."). Mills tried to circumvent this forum selection clause by suing A.A. Turk's subsidiary, Anadolu. But this forum shopping failed as Mills failed to state a plausible claim against Anadolu.

In an effort to plead around the undisputed fact that Mills worked for A.A. Turk, Mills alleged in a conclusory fashion that A.A. Turk and Anadolu "jointly employed" Mills. JA 71-72. Then, by using group pleading tactics, Mills lumped together A.A. Turk and Anadolu as is if they are one and the same entity. *Id.* Mills referred to the two companies as a "single employer" and then asked the Court "to hold the subsidiary [Anadolu] liable for the alleged actions of the nonparty parent company [A.A. Turk]." JA 73. In other words, Mills asked the court to treat Anadolu as vicariously liable for the actions of A.A. Turk, but she offered no factual or legal basis for the District Court to do so.

The District Court properly recognized that "[t]he doctrine of limited liability creates a strong presumption that a parent corporation is not the employer of its subsidiary employees and only evidence of control suggesting a significant departure from the ordinary relationship between a parent and its subsidiary is sufficient to establish a joint employer relationship." JA 72. With that in mind, the District Court noted that Mills had her theory backwards. JA 73. In the typical case, a plaintiff

employed by a subsidiary seeks to hold the corporate parent liable as a joint employer by alleging that the parent had ***control*** over the employment actions taken by its subsidiary. JA 73 (finding "none of the cases Ms. Mills cites to,…involve a complainant prevailing in a claim against a subsidiary based on the control a nonparty parent"). Here, however, Mills worked for the parent corporation (A.A. Turk) and was trying to hold its American subsidiary (Anadolu) liable for the purported actions of its parent.

Not only is this theory legally unsound, it also lacks any factual allegations to support it. As the District Court held, Mills failed to plead any factual allegations that would "allow the Court to make a plausible inference that the requisite control would flow from the subsidiary [Anadolu] to the parent [A.A. Turk]." JA 75

Having dispensed with Mills' "single employer" theory of vicarious liability, the District Court then turned to the question whether Anadolu was an "employer" under the DCWPCL. JA 75-80. To answer this question, the District Court applied the "economic reality test" to Mills' Amended Complaint to determine if she adequately pleaded the existence of an employment relationship. *Id.* The "economic reality test" considers "whether the alleged employer: (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Morrison v. Int'l Programs Consortium, Inc.,* 253

F.3d 5, 11 (D.C. Cir. 2001).

Applying this test to the allegations in Mills' Amended Complaint, and drawing all reasonable inferences in her favor, the District Court found:

> (1) Ms. Mills was hired by A. A. Turk; (2) A. A. Turk paid Ms. Mills's wages and administered her benefits throughout her entire period of employment; (3) A. A. Turk assigned her to Anadolu's office; (4) A. A. Turk remained the only party to Ms. Mills' alleged employment contracts; and (5) an A. A. Turk employee informed her of her alleged discharge.

JA 80. Again, in her Amended Complaint Mills identified no facts specific to Anadolu but hoped to prevail by lumping it together with its parent A.A. Turk. JA 79 (holding "Lumping both the parent and subsidiary company together with the elements of the 'economic reality' test is not sufficient to state a plausible allegation for the subsidiary's liability."). And in the instances where Mills directly referenced Anadolu, Mills offered nothing more than "'formulaic recitations of the elements' of the 'economic reality' test." JA 78 (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Ultimately, through vague pleading Mills hoped she could avoid the forum selection clause she signed with A.A. Turk requiring her to bring her claims in Turkiye by suing its subsidiary, Anadolu. But as the District Court's thorough and thoughtful opinion showed, Mills' one-count Amended Complaint contained only 'naked assertion[s]' devoid of 'further factual enhancement.'" *See Iqbal*, 556 U.S. at

20

678. Accordingly, because Mills failed to plausibly allege Anadolu to be her "employer," she failed to state a claim under the DCWPCL.

Here on appeal, Mills claims the District Court committed three errors with respect to her claim under the DCWPCL. These arguments fail legally and misstate the record below.

*First,* Mills argues that the District Court applied the wrong test to her argument that Anadolu was a joint employer. Pl.'s Br. at 10-11. Specifically, Mills argues the District Court erred by "apply[ing] the independent contractor factors in *Morrison v. Int'l Programs Consortium, Inc.* 253 F.3d 5 (2001), which have no relevance to the joint employer calculus." Pl.'s Br. at 10-11. This argument fails at the outset because, below, Mills asked the District Court to apply the *Morrison* economic realities test. Pl.'s Opp'n to MTD at 14-15 [ECF No. 18] (citing to *Morrison* for the economic realities test and arguing "Plaintiff alleged that Anadolu and A.A. jointly employed the Plaintiff under the economic realities test."). The District Court applied the law that Mills argued should be applied; Mills cannot now argue that was error on the part of the District Court. An appeal is not a mulligan. Mills cannot present new arguments on appeal and so these arguments should not even be considered. *Sampaio*, 468 F. App'x at 10 (D.C. Cir. 2012); *see also Stover*, 329 F.3d at 872.

Although Mills made no such argument below, here on appeal, she essentially

21

asks the Court to dispense with *Morrison*'s economic reality test and instead adopt the joint employer test applied under the National Labor Relations Act or, in the alternative, the 4th Circuit's six-factor economic reality test. Pl.'s Br. at 11-15 (citing to *Browning-Ferris Industries of California, Inc. v. National Labor Relations Board*, 911 F.3d 1195, 1213-15 (D.C. Cir. 2018) and *Salinas v. Com. Interiors, Inc*., 848 F.3d 125, 131 (4th Cir. 2017)).  Such an invitation to create new law in this Circuit should be declined, because Mills waived this argument by failing to raise it below.

Moreover, the District Court correctly relied upon *Morrison*'s "economic reality test" to answer the question whether Anadolu "employed" Mills. The question is not whether Anadolu "jointly employed" Mills, the question is whether Anadolu "employed" Mills. *See* D.C. Code §§ 32-1301(1B), 1303. That question is answered by *Morrison's* "economic reality test." *Morrison*, 253 F.3d at 10 (D.C. Cir. 2001); *Ventura v. Bebo Foods, Inc*., 738 F. Supp. 2d 1, 5 (D.D.C. 2010) (applying economic reality test to "joint employer" analysis); *Al-Quraan v. 4115 8th St. NW, LLC,* 113 F. Supp. 3d 367, 369 (D.D.C. 2015) (same); *Perez v. C.R. Calderon Constr., Inc*., 221 F. Supp. 3d 115, 141 (D.D.C. 2016) (same).  And under this test, no one factor alone is dispositive, courts must consider "the totality of the circumstances." *Perez¸* 221 F. Supp. 3d at 141.

Furthermore, the District of Columbia Court of Appeals recently adopted the *Morrison* economic realities test to determine whether an individual is an "employee

22

with the meaning of the DCWPCL. *Steinke v. P5 Sols., Inc*., 282 A.3d 1076, 1085 (D.C. 2022). *Morrison* is settled law and binding precedent that correctly guided the District Court's decision to decide whether Anadolu employed Mills. While an employee may have more than one employer under the DCWPCL, the employee would still need to establish the existence of the employment relationship for each employer under the economic realities test.

*Second*, Mills further argued on summary reversal that the trial court only cited "four of the nine *Morrison* factors." Pl.'s Mot. for Summ. Reversal at 11. Mills repeats this argument here. Pl.'s Br. 18. This is an amazing position for Mills to take because below she cited to *Morrison* and asked the Court to apply "four, non-exclusive factors" to determine whether Anadolu employed Mills, which is reprinted below:

> *v. Whitaker House Co-op., Inc*., 366 U.S. 28, 33 (1961). In this District, whether an entity employs a person is determined by application of four, non-exclusive, factors, *i.e.* whether the prospective employer: (1) had the power to hire and fire the employee; (2) controlled the terms and conditions of employment; (3) determined the rate and method of pay; and (4) maintained employment records. *See Saint-Jean v. District of Columbia Public Schools Div. of Transp*., 815 F.Supp.2d 1, 4 (D.D.C. 2011) (citing *Morrison v. International Programs Consortium, Inc*., 253 F.3d 5, 11 (D.C. Cir. 2001).

Opp'n to Mot. to Dismiss at 14 [ECF No. 18]. And later in her brief below, Mills cited to *Morrison* and argued there are five factors. *Id.* at 16. Yet now on appeal, Mills argues that *Morrison* is the wrong law, and the District Court should have

considered nine (9) factors, not the four (4) non-exclusive factors she argued for below. Pl.'s Br. at 12-13. It is inappropriate to fault the District Court for doing exactly what Mills asked it to do below. Nevertheless, this argument should not be considered as they were not raised below. *Sampaio*, 468 F. App'x at 10; *see also Stover*, 329 F.3d at 872.

*Third,* notwithstanding Mills' waiver, the District Court correctly applied *Morrison*'s economic reality test to Mills' Amended Complaint. JA 80.  Drawing all reasonable inferences in her favor, the District Court found:

> No one factor is dispositive in determining whether an employer-employee relationship exists. But viewing the totality of the circumstances--(1) Ms. Mills was hired by A. A. Turk; (2) A. A. Turk paid Ms. Mills's wages and administered her benefits throughout her entire period of employment; (3) A. A. Turk assigned her to Anadolu's office; (4) A. A. Turk remained the only party to Ms. Mills' alleged employment contracts; and (5) an A. A. Turk employee informed her of her alleged discharge—the Court must conclude that Anadolu was not Ms. Mills's employer…

JA 80.

Mills argues that the District Court incorrectly found that A.A. Turk hired her, fired her, paid Mills' wages and administered her benefits, and maintained her employment records. Pl.'s Br. 13-14. Nonsense. These are the facts contained in the Amended Complaint. JA 11 ("Plaintiff entered into an employment contract with A.A. Turk by signing an offer letter" countersigned by "A.A. Turk's Director of

Operations, set[tting] forth the terms of Plaintiff's employment" and benefits); JA 12 (after "A.A. Turk assigned her to work in Anadolu's Washington, D.C. bureau…her job titled remained the same…Plaintiff received the same salary and received the same benefits…"); JA 13 (Plaintiff emailed Kim Adams, "employed by A.A. Turk, to inquire about the remaining balance of her available paid leave", which is the basis of her lawsuit); JA 13 (on July 29, 2019 Mills was informed that "A.A. Turk was not renewing [Mills'] most recent Consultancy Agreement").

As a final point, Mills claims that the District Court "credited Anadolu's extrinsic declaration and concluded that the person who terminated Mills (Sevgi) was never employed by Anadolu and that it must have been A.A. Turk that terminated Mills." Pl.'s Br. at 14. Not true. The only reference to the Oktay Declaration in the entire Memorandum Opinion on Plaintiff's DCWPCL claim is the District Court's recognition that Mills retreated from her allegation in the Amended Complaint that she was "discharged by Mehmet Ali Sevgi, an employee of Anadolu who worked at the D.C. Bureau", and instead argued in her Opposition that Sevgi was not in fact employed by Anadolu but instead "physically worked at Andolu's D.C. office." JA 76 (*Comparing* Am. Compl. at ¶ 2; *with* Pl.'s Opp'n at 31 (ECF No. 18)). Accordingly, the District Court recognized that Mills withdrew her allegation that Sevgi was employed by Anadolu, by conceding in her Opposition brief that Sevgi was not employed by Anadolu.

Despite the fact that Mills wisely withdraw her allegation that Sevgi was employed by Anadolu when confronted with evidence to show this allegation to be inaccurate, Mills tries to walk back that concession by once again claiming Sevgi to be a manager employed by Anadolu. Pl.'s Br. at 17. But Mills cannot raise arguments here on appeal that were not properly before the District Court.

Mills then gets further tangled up in her shifting facts when she argues here that "Oktay only testified that Sevgi was not employed by Anadolu....Oktay never testified that it was A.A. Turk, and not Anadolu, that terminated Mills, yet that is the conclusion the Trial Court drew..." Pl.'s Br. at 17.  Not so. The Amended Complaint, not the Oktay declaration, is the source of this fact. Specifically, the Amended Complaint states that Sevgi told Mills that "A.A. Turk was not renewing her most recent Consultancy Agreement." JA 13.

Thus, because it is so clear that Mills failed to state a plausible claim under the DCWPCL, the District Court's decision granting Anadolu's motion to dismiss should be affirmed.

## III.     This Should Court Affirm on the Alternative Basis, *Forum Non Conveniens*

Below, Anadolu also argued for dismissal based on *forum non conveniens*. The District Court did not reach this argument, nor does this Court need to. Nevertheless, this Court does have "discretion to consider alternative grounds for affirmance resting on purely legal arguments." *In re Fed. Bureau of Prisons'*

*Execution Protocol Cases*, 955 F.3d 106, 112 (D.C. Cir. 2020). Accordingly, although it need not reach the issue of *forum non conveniens*, it has the discretion to also affirm the District Court's dismissal on this alternative basis.

Under U.S. Supreme Court precedent, "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *D & S Consulting, Inc. v. Kingdom of Saudi Arabia*, 961 F.3d 1209, 1212 (D.C. Cir. 2020) (*quoting Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 60 (2013). "In particular, 'if the plaintiff has entered into a contract to litigate his claims in a specific forum, the defendant may enforce that agreement by moving to dismiss for *forum non conveniens*.'" *Id.* (*quoting Azima v. RAK Inv. Auth.,* 926 F.3d 870, 874 (D.C. Cir. 2019)).

A "valid forum-selection clause" is "given controlling weight in all but the most exceptional cases." *D & S Consulting, Inc.*, 961 F.3d at 1212. As long as the forum-selection clause is applicable, mandatory, valid, and enforceable, the court must almost always grant the motion to dismiss. *Azima,* 926 F.3d at 874.

Under this Circuit's precedent, "a clause is applicable if its scope encompasses the dispute, which we assess using normal principles of contract interpretation." *Id.* To the extent that Mills attempts to argue in her Reply that the forum selection clause is *applicable* only to A.A. Turk, and not Anadolu, that argument fails. The law prevents a party from circumventing a forum selection

27

clause simply by suing a company's subsidiary. Because Mills is suing under her Contract with A.A. Turk, she is estopped from avoiding the forum selection clause contained therein.

"[T]raditional principles of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel…'" *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631, 129 S. Ct. 1896, 1902 (2009). "Under the doctrine of estoppel, a signatory to an arbitration agreement may be compelled to arbitrate with a non-signatory when the non-signatory is seeking to resolve issues that are intertwined with an agreement that the signatory has signed." *Fox v. Computer World Servs. Corp.*, 920 F. Supp. 2d 90, 103 (D.D.C. 2013). And although this is a forum selection clause, not an arbitration clause as in *Fox*, the doctrine of estoppel applies equally. Mills' claims here against Anadolu are based on and "intertwined with" the Contract requiring that she resolves all disputes in Turkiye. As such, she is bound by the forum selection clause.

If a forum selection clause is *mandatory*, "a court will enforce the clause except in the 'most unusual or rare instance in which the public interest requires 'disrupting the parties' settled expectations as reflected in the forum-selection clause.'" *D & S Consulting, Inc.*, 961 F.3d at 1213 (D.C. Cir. 2020). "A forum-selection clause is 'mandatory' if it 'requires that litigation proceed in a specific

forum,' and is 'permissive' if it 'permits litigation to occur in a specified forum but does not bar litigation elsewhere.'" *Id.*  Here, the forum selection clause provides, "Ankara [Turkiye] Courts and enforcement offices ***shall be the exclusive*** authorized venues for the resolution of any matter of controversy or dispute between the parties relates there to."). JA 22 (emphasis added). The clause is mandatory; it is broad; and it is all-encompassing.

There is also no dispute here that the provision is valid and enforceable as it is contained in the Contract under which Plaintiff brings her claim.

Finally, this is not a "rare", "unusual", or "uncommon" case where the public interest factors would defeat the forum selection clause. *Azima v. RAK Inv. Auth.*, 926 F.3d at 880. The "public interest factors include considerations like administrative convenience, judicial economy, a forum's familiarity with applicable law, and its interest in hearing the case." *D & S Consulting, Inc.*, 961 F.3d at 1214. Plaintiff cannot "meet the heavy burden" of showing that [any of the four] public interest factors "overwhelmingly disfavor dismissal" in this case. *D & S Consulting, Inc. v. Kingdom of Saudi Arabia*, 322 F. Supp. 3d 45, 49 (D.D.C. 2018) (*quoting Atl. Marine Const. Co.,* 571 U.S. at 67).

Each of these factors waive in favor of dismissal. Accepting Plaintiff's allegations as true, she only worked for a short time in D.C. and the remainder of her tenure was in Turkiye. JA at ¶ 12 [ECF No. 10]; JA 20-35 (contracts). A majority

29

of the witnesses will be located in Turkiye. Plaintiff alleges that Anadolu agreed to provide paid vacation leave at the commencement of her tenure with Anadolu. Accepting the Plaintiff's allegations as true, Plaintiff worked in Turkiye during this time period and all of the relevant witnesses will be based in Turkiye. Further, the proper Defendant that entered into the Contract with Plaintiff, A.A. Turk, is based in Turkiye. JA 20-22.

In addition, this is not a situation where Plaintiff has little connection to the foreign jurisdiction. Plaintiff received a housing allowance in Turkiye, relocation allowance to ship her possessions to Turkiye, reimbursement for her children's private schooling in Turkiye, and reimbursement of airfare for her and her family to return to the United States once per year from Turkiye. JA 40-41. Plaintiff willingly, knowingly, and voluntarily chose to work for A.A. Turk in Istanbul, Turkiye. *Id.* She agreed that "Turkish employment laws" would apply to her work for Anadolu A.A. Turk. And she agreed that the "Ankara Courts" shall be the exclusive forum for resolving any disputes in connection with her consultancy Contract.

Moreover, Plaintiff's work for A.A. Turk was as an independent contractor under a written Contract and the majority of her alleged employment was in Turkiye. Further, the offer letter states that "this agreement is subject to Turkish employment laws" and that Mills' work for A.A. Turk was to be performed "in Istanbul." JA 40-41. So whether the case is here in the District of Columbia or in Ankara, the forum

30

will have issues involving application of foreign law. In the event the case is not dismissed, this Court would need to apply Turkish law and interpret the Contract under Turkish law. Accordingly, each of these factors do not support Plaintiff's heavy burden to show that the public interest factors overwhelmingly disfavor dismissal.

Thus, because the forum selection clause is mandatory and the public interest factors favor dismissal, this Court can affirm the District's Court's dismissal of this case on the alternative basis of *forum non conveniens*.

## CONCLUSION

The Court should affirm the judgment below.

Dated:        April 3, 2023            Respectfully submitted,

KLAPROTH LAW PLLC

*/s/ Brendan J. Klaproth*
Brendan J. Klaproth (D.C. Bar No. 999360)
2300 Wisconsin Ave NW
Suite 100A
Washington, DC 20007
Tel:   202-618-2344
Email: bklaproth@klaprothlaw.com
*Attorney for Appellee*

31

## CERTIFICATE OF COMPLIANCE

1. This brief complies with Fed. R. App. P. 32 (a)(7), because this brief does not exceed 13,000 words. It contains 7,316 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f)

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Size 14 Times New Roman font.

*/s/ Brendan Klaproth*


## CERTIFICATE OF SERVICE

I certify that a copy of Appellee's brief was served upon counsel for the Appellant through the Court's electronic filing system.

*/s/ Brendan Klaproth*